**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **GAYE L. WHIPP,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. CIV-07-1102-F |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Gaye L. Whipp ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of Defendant Commissioner's final decision denying, in part, Plaintiff's application for disability insurance benefits under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

**Administrative Proceedings**

Plaintiff initiated these proceedings by filing her application seeking disability insurance benefits in January, 2004 [Tr. 56 - 58]. She alleged that she suffered an injury in February, 2003 which resulted in a spinal fusion and in disabling back pain and spasms as well as in nerve damage in her right hip and leg [Tr. 76]. Plaintiff's claims were denied initially and upon reconsideration [Tr. 32 - 35 and 38 - 40]; at Plaintiff's request an Administrative Law Judge ("ALJ") conducted an April 2006 hearing where Plaintiff, who

was represented by counsel, and a vocational expert testified [Tr. 41 and 494 - 530]. The ALJ subsequently issued a partially favorable decision finding that while Plaintiff was disabled within the meaning of the Social Security Act from February 18, 2003– the date of an on-the-job injury [Tr. 180] – through March 21, 2004, medical improvement related to Plaintiff's ability to work occurred as of March 22, 2004, and that Plaintiff has been able to perform work available in the national economy since that date [Tr. 17 - 27]. Consequently, the ALJ concluded Plaintiff's disability ended on March 22, 2004. *Id.* The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 5 - 8], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Plaintiff's Claims of Error**

It is Plaintiff's contention that "[t]he [Commissioner's] decision is not supported by substantial evidence." [Doc. No. 11, p. 5].  Specifically, Plaintiff maintains that while the ALJ concluded that "Plaintiff's allegations concerning the intensity, duration and limiting effects of her symptoms after March 22, 2004 are not entirely credible," [Doc. No. 11, p. 6], "[t]here is more than substantial evidence to support the allegations of intensity, duration and limiting effects suffered by Plaintiff." *Id.* at 7.  Plaintiff also maintains that the ALJ's decision "places overwhelming emphasis" on the opinions of Plaintiff's treating surgeon while discrediting the opinions of Plaintiff's primary care physician. *Id.* at 6.  In connection with these arguments, Plaintiff relies upon the ALJ's decision itself and upon the following documentation in the record: Tr. 234, 235, 276 - 298, 329 - 337, 477 - 482, and 483 - 485; accordingly, the undersigned's review for error is likewise focused upon these designated portions of the record.

**Analysis**

**Medical Improvement**

The ALJ determined that at all times relevant to the decision Plaintiff was severely impaired by a back condition and depression [Tr. 21].  In connection with the back condition, the ALJ noted that Plaintiff's medical history was positive for a bilateral laminectomy [Tr. 21 and 264]; records reflect that she recovered well from the procedure and returned to work in June, 2001 [Tr. 264].  Then, on February 18, 2003 – her claimed onset of disability date [Tr. 56] – she re-injured her back while at work [Tr. 21 and 264].  The ALJ noted that "[t]his

re-injury was diagnosed with a discogenic pain disorder at L5-S1 with foraminal stenosis [and that c]onservative treatment proved ineffective and in September 2003 the claimant underwent a bilateral laminectomy of L4, L5, and S1 and complete discectomy and arthrodesis at L5-S1." [Tr. 21].

The ALJ concluded that from February 18, 2003 – the date of Plaintiff's re-injury – through March 21, 2004, Plaintiff "had the residual functional capacity[1] to perform significantly less than the full range of sedentary work." *Id.*  Because Plaintiff could not perform either her past relevant work or any jobs in the national economy, the ALJ found her to be disabled for this period of time [Tr. 21 - 22].  As of March 22, 2004, however, the ALJ found the evidence showed a medical improvement in Plaintiff's condition which was related to her ability to work, concluding that Plaintiff now has the RFC for light work [Tr. 22 - 23]. The ALJ imposed the following limitations on Plaintiff's ability to perform such light work: she was limited to occasional climbing and stooping; to frequent balancing, kneeling, crawling and crouching; to simple and detailed, but not complex job instructions and, she was incapable of public contact or customer service. [Tr. 23].

The ALJ's analysis was in keeping with the two-fold medical improvement test explained in *Sheperd v. Apfel*, 184 F.3d 1196 (10th Cir. 1999):

> To apply the medical improvement test, the ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. § 404.1545 (a) (1).

>   medical decision finding the claimant disabled. Then, in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the current severity of the impairment(s) which was present at claimant's last favorable medical decision. The ALJ must then compare the new RFC with the RFC before the putative medical improvements. The ALJ may find medical improvement related to an ability to do work only if an increase in the current RFC is based on objective medical evidence.

*Id.* at 1201 (citations omitted). It is Plaintiff's contention, however, that she remains disabled and that the ALJ's decision is not supported by substantial evidence.

The ALJ's decision reflects evidentiary reliance for her medical improvement determination on the opinion of Plaintiff's treating surgeon, Emily D. Friedman, M.D.:

>   [T]he undersigned notes although the claimant underwent a bilateral laminectomy of L4, L5, and S1 and complete discectomy and arthrodesis at L5-S1 on September 10, 2003, postoperatively the claimant's condition improved dramatically. Specifically, on October 7, 2003, the claimant informed her treating physician she was "surprised at how much better she is" with the decreased use of pain medication and the resolution of her severe back pain. On November 3, 2003, the claimant informed her physician that her condition had "definitely improved," informing her physician that she was walking, driving, and engaging in light housework. Upon physical examination conducted on January 8, 2004, the claimant's treating physician noted negative straight leg raising and "excellent" strength. A concurrent x-ray examination revealed "excellent" placement of the surgical hardware, good placement of the bone graft, and no motion at the surgical site.
>
>   Based upon these negative findings, as well as the claimant's statements of her improved condition, the claimant's physician opined the claimant was capable of "a wide range of light duty work[.]" Thereafter, on March 22, 2004, the claimant's treating physician opined the claimant had reached maximum medical improvement. The claimant's treating physician noted normal motor strength and referred to a functional capacity evaluation completed by a physical therapist. He [sic] noted the physical therapist observed steady and smooth movements with normal gaits and transfers as well as the absence of muscle atrophy.

[Tr. 23 (record references omitted)].

Next, in determining whether Plaintiff's medical improvement was related to her ability to work, the ALJ reassessed Plaintiff's RFC and, in so doing, considered Plaintiff's alleged symptoms as well as the objective and opinion evidence of record:[2]

> The claimant testified that she remains disabled due to constant back pain of varying severity with associated muscle spasms in the right buttock and stabbing pain in the right thigh. The claimant testified her pain is of sufficient severity to affect her concentration and her ability to sleep. In addition, the claimant indicated her ability to work is compromised [ ] psychiatric signs and symptoms including depression, a dislike of being around people, social isolation, and anxiety with chest pain. Finally, the claimant also described a history of bilateral foot surgery.
>
> Regarding her functional limitations, the claimant estimated she is limited to standing 20 to 30 minutes and described limitations on bending, stooping, and sitting. Regarding her daily activities, the claimant described daily activities including light housework and laundry; however, she testified that she no longer exercises or gardens. In addition, the claimant testified that she has traveled from her home in Lawton, Oklahoma to Norman, Oklahoma once a month since February 18, 2003.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible beginning on March 22, 2004.
>
> In support of the forgoing finding regarding the claimant's allegations of a disabling impairment, the undersigned notes although in September 2003 the claimant underwent a bilateral laminectomy of L4, L5, and S1 and complete discectomy and arthrodesis at L5-S1, postoperatively, the claimant's condition

---

[2]Because Plaintiff makes no claim of error with respect to the ALJ's assessment of the opinions provided by mental health medical sources – Plaintiff's transcript citations being limited instead to the records of her treating physician, Kevin M. Riccitelli, D.O. – the ALJ's findings in that regard are not repeated.

improved dramatically. On October 7, 2003, the claimant informed her treating physician she was "surprised at how much better she is" with the decreased use of pain medication and the resolution of her severe back pain. On November 3, 2003, the claimant informed her physician that her condition had "definitely improved," informing her physician that she was walking, driving, and engaging in light housework. Upon physical examination conducted on January 8, 2004, the claimant's treating physician noted negative straight leg raising and "excellent" strength. A concurrent x-ray examination revealed "excellent" placement of the surgical hardware, good placement of the bone graft, and no motion at the surgical site. Based upon these negative findings, as well as the claimant's statements of her improved condition, the claimant's treating physician opined the claimant was capable of "a wide range of light duty work."

Only a few days after this assessment, on January 18, 2004, the claimant sought the services of a doctor of osteopathic medicine who opined the claimant was incapable of sedentary or light duty work. In making this assessment, the doctor of osteopathic medicine considered the claimant's age and additional vocational factors. There is no evidence this individual has any training or expertise in vocational matters. Consequently, the undersigned finds this assessment to be of limited probative value.

Moreover, on March 22, 2004, the claimant's treating physician opined the claimant had reached maximum medical improvement. The claimant's treating physician noted normal motor strength. The claimant's treating physician referred to a functional capacity evaluation completed by the claimant's physical therapist. He [sic] noted the physical therapist observed steady and smooth movements with normal gaits and transfers as well as the absence of muscle atrophy. He [sic] also noted the physical therapist's observation the claimant was unwilling to work to her maximum abilities, with self limiting behavior on lifting and carrying.

On September 23, 2004, the claimant's osteopathic physician completed Attending Physician's Statement, indicating the claimant remained disabled, with the inability to engage in even minimal activity. On May 2, 2005, the claimant's osteopathic physician stated that he considered the claimant temporarily disabled with significant limitations on sitting and standing and medication side effects that would render the claimant incapable of working. On October 18, 2005, the claimant's osteopathic physician opined the claimant was incapable of vocational rehabilitation due to her medical condition. As the above assessments are contrary to the claimant's treating physician's

assessment of maximum medical improvement, the undersigned finds them to be of reduced probative value.

[Tr. 23 - 25 (record and regulatory references omitted)].

Based upon Plaintiff's reassessed RFC[3] – light work with restrictions including no public contact or customer service and simple to detailed, but not complex job instructions [Tr. 23] – the ALJ determined that Plaintiff could not return to the work that she was performing at the time of her injury but was capable of performing light, semiskilled work available in the national economy [Tr. 26].

Plaintiff argues that the foregoing determination is not supported by substantial evidence [Doc. No. 11, p. 5]. In making this claim, her first specific allegation of error is that "[t]he Decision places overwhelming emphasis on the opinion of the surgeon who performed Plaintiff's spinal surgery to establish the RFC." *Id.* at 6. While not denying that her surgeon did conclude that she was capable of meeting the functional requirements of light work – thus providing substantial evidence to support the ALJ's determination – Plaintiff argues that the surgeon also stated that it would be appropriate for Plaintiff to utilize her primary care physician for medication therapy, that medication therapy would be appropriate for up to twelve months, that it was not unusual for someone of Plaintiff's age and with her work history to seek disability, and that the surgeon would not discourage her from doing so. *Id.* and [Tr. 234 - 235]. None of these statements by Plaintiff's surgeon, however, alters the

---

[3]In formulating this RFC, the ALJ specifically noted the physical and mental functional assessments completed by the State agency medical consultants [Tr. 25]. *See* 20 C.F.R. 404.1527 (f) (2).

surgeon's opinion with respect to Plaintiff's functional capabilities. Moreover, the surgeon's statement with respect to Plaintiff's continued need for medication underscores the fact that her functional capability recommendation, along with her opinion that Plaintiff could return to light duty work, was made with the knowledge that Plaintiff was currently being treated with narcotic medication and had been for over a year.[4]

Next, Plaintiff contends that "[t]he Decision makes a point of discrediting the opinions of that [sic] primary care physician regarding Plaintiff's physical limitations finding there is no evidence of training or expertise in vocational matter." [Doc. No. 11, p. 6]. She maintains that "there is absolutely no evidence of training or expertise in vocational matters for the physician placing Plaintiff at a wide range of light duty work." *Id.* The treating surgeon's recommendation for light duty work was made following a January, 2004 physical examination which found negative straight leg raising and "excellent" strength [Tr. 239]. The treating surgeon also relied upon Plaintiff's physical therapy results as well as x-ray results revealing "excellent placement of the pedicle screws, good placement of the interbody bone graft, [and] no motion with flexion and extension." *Id.* At this January 8, 2004, examination, in addition to reporting "some burning discomfort in the right thigh, and also in the area from which the bone graft was taken on the right buttock[,]" Plaintiff reportedly complained to her surgeon only of decreased endurance and the inability to walk "for very

---

[4] Although the ALJ did not find medical improvement until March of 2004, the treating surgeon found in January, 2004, that Plaintiff could work, not at her previous factory job but at light duty work [Tr. 239].

long." *Id.*  Nonetheless, less than two weeks after that examination and following the surgeon's light duty work recommendation, Plaintiff reported not only "right leg parathesis" but such "significant" lower back pain to Kevin Riccitelli, D.O., – whose physical findings were limited to "muscle spasm and tenderness along the entire right paralumbar spine and tenderness into the hips" – that Dr. Riccitelli opined that Plaintiff would have trouble with sitting or standing for very long at a time and would need to change positions [Tr. 287]. Dr. Riccitelli also opined that there were very few jobs which would allow Plaintiff to do this and that, given Plaintiff's age, he was recommending that she be considered disabled on a long-term basis. *Id.*  The ALJ properly discounted Dr. Riccitelli's opinion that Plaintiff should be considered disabled "on [a] long-term," *id.,* basis – an issue reserved to the Commissioner pursuant to 20 C.F.R. § 404.1527 (e) (1) – and his opinion as to the availability of certain jobs.  There is no evidence of record that Dr. Riccitelli is a vocational expert with specialized knowledge of the availability of jobs in the national economy.   Moreover, the ALJ did not find medical improvement in January 2004 when the competing reports were issued and, consequently, did not reject Dr. Riccitelli's opinion in its entirety [Tr. 24, 239 and 287].

The ALJ instead found that through March 21, 2004, there were *no* jobs which Plaintiff could perform [Tr. 22].  Thereafter, however, in reliance upon another follow-up opinion by Plaintiff's treating surgeon [Tr.234 - 235], the ALJ found medical improvement [Tr. 22]. In opining that Plaintiff had the functional capacity for light work with restrictions,[5]

---

[5]Plaintiff does not argue that this finding is not competent evidence in support of the ALJ's decision.  Instead, she urges that other evidence overwhelmingly supports Plaintiff's

10

Plaintiff's treating surgeon noted that Plaintiff was not pain free following her surgery and, in that regard, continued to voice the following complaints: some stiffness and pain in her low back and in her right hip where a bone graft was harvested; some numbness in the right thigh and down the right leg; and, some aching and stiffness in her low back [Tr. 234]. The treating surgeon further noted that Plaintiff reminded her that she continued to need narcotic medication for pain as well as a muscle relaxer; the treating surgeon discussed with Plaintiff that she had been on narcotic pain medication for over a year, including a time when she had still been working. *Id.* The treating surgeon's notes also show that Plaintiff stated that she did not feel that she could return to work in light of her need for pain medication. *Id.*

Nonetheless, on examination the treating surgeon found that Plaintiff's incisions were well-healed and that her motor strength was normal. *Id.* The treating surgeon also reviewed and reported the results of Plaintiff's functional capacity evaluation: Plaintiff has a steady, smooth movement with normal gait and transfers; she has no muscle atrophy; normal flexion is rated at 80 degrees and she has 65 degrees and normal extension is rated at 30 degrees and she has 25 degrees, "all typical of a lumbar fusion"; and, her hip flexion is also reduced secondary to her L5 - S1 fusion. *Id.* It was further reported that Plaintiff had consistent performance on the evaluation "but she was unwilling to work to her maximum abilities, having self-limited on some lifts and carry testing." *Id.* With respect to weight capacities, Plaintiff could lift 20 pounds floor to waist; she could lift 20 pounds waist to overhead

---

allegations regarding the intensity, duration, and limiting effects of her impairments [Doc. No. 11, p. 7].

occasionally and 10 pounds frequently; she could horizontally transfer 20 pounds occasionally; and, she could push or pull 30 pounds. *Id.* Forward bending and sitting could be performed occasionally and she could walk frequently and climb occasionally. *Id.*

Plaintiff again maintains that the ALJ placed "overwhelming emphasis" on the findings of the treating surgeon and, in support of this claim, argues that:

> The physician who provide [sic] pain management at the recommendation of the surgeon is in fact in the best position to provide an opinion as to Plaintiff's limitations after March 22, 2004. Subsequent diagnostic testing performed February 22, 2007 in the form of a lumbar MRI reflects post-operative changes with scarring and a transpedicular screw mildly abutting the exiting L5 nerve root. The records of the treating physician providing ongoing pain management services to Plaintiff indicate an individual suffering from chronic pain related to an unsuccessful fusion procedure. There is more than substantial evidence to support the allegations of intensity, duration and limiting effects suffered by Plaintiff. In fact it is overwhelming.

[Doc. No. 11, pp. 6 - 7 (record references omitted)].

As previously described, the ALJ specifically addressed Dr. Riccitelli's opinions that Plaintiff was disabled as a result of what he termed a "failed" back surgery [Tr. 394][6] which

---

[6]The results of the subsequent diagnostic testing performed in February 22, 2007, and submitted to the Appeals Council for review [Tr. 8] do not establish that Plaintiff's back surgery was a failure. The physician who interpreted the results of Plaintiff's MRI reported as follows:

> Postoperative changes of laminectomy at L5 and posterior mechanical fusion endeavor with minimal enhancing scar along the posterior L5 vertebra and L5-S1 disc space. Right L5 transpedicular screw is mildly abutting the exiting L5 nerve root without significant neuroforaminal or central canal narrowing seen.

[Tr. 485]. The Commissioner argued in response to Plaintiff's brief that "the newly submitted evidence indicates only minimal changes in Plaintiff's spine." [Doc. No. 12, p. 11]. Plaintiff did not exercise her option to file a reply brief [Doc. No. 8] explaining to the court

resulted in her complete inability to engage in even minimal activity [Tr. 24 - 25].[7] The ALJ declined to give the opinions of Dr. Riccitelli controlling weight because they were inconsistent with other substantial evidence in the record - the opinions of Plaintiff's treating surgeon. It was not error for the ALJ to do so. *See Watkins v. Barnhart,* 350 F. 3d 1297, 1300 (10th Cir. 2003); Social Security Ruling 96-2p, 1996 WL 374188, at *2. The ALJ did not completely reject the opinions of Dr. Riccitelli – noted by the ALJ to be a doctor of osteopathic medicine [Tr. 24] – as to Plaintiff's complaints of pain but assigned them reduced weight because they were in conflict with the evidence provided through the treating surgeon [Tr. 25]. The ALJ provided a reason supported by law, *see Watkins,* 350 F. 3d at 1300; Social Security Ruling 96-2p, 1996 WL 374188, at *2, and reversal on this ground is not warranted.

Plaintiff next recites, without argument, that the ALJ found Plaintiff to be severely impaired by depression, noting in her decision that Plaintiff testified that her pain impacted her concentration and ability to sleep and that she disliked being around people and suffered from anxiety [Doc. No. 11, p. 7]. As noted, Plaintiff makes these recitations without accompanying argument demonstrating error. The undersigned finds in any event that the

---

how the evidence suggests otherwise. Substantial evidence continues to support the ALJ's decision.

[7]Contrary to Dr. Riccitelli's statement [Tr. 377], Dr. Friedman, the treating surgeon, specifically considered Plaintiff's post-operative claim that she was experiencing pain and numbness in her right leg [Tr. 234 - 239].

ALJ properly accommodated Plaintiff's claimed limitations by limiting her to simple and detailed, but not complex job instructions and shielding her from public contact or customer service [Tr. 23].

Plaintiff then states that the ALJ's decision notes that Plaintiff performs light housework, does laundry, and has traveled from her home in Lawton to Norman on a monthly basis [Doc. No. 11, p. 7]. Plaintiff maintains that the ALJ improperly "places emphasis upon these minimal daily activities to support the finding that [Plaintiff's] allegations of the intensity, duration and limiting effects of [her] impairment are not credible." *Id.* In this connection, Plaintiff argues that "[i]t is well established that recitation of an individual's daily activities is not substantial evidence to refute the individual's complaint's [sic] of "disabling pain or credibility" and that an "improper standard" was applied in the evaluation of Plaintiff's symptoms." *Id.* at 7 - 8.

An ALJ's "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). A review of the ALJ's decision shows that the ALJ carefully described Plaintiff's testimony – including her description of her symptoms, her limitations and her daily activities [Tr. 23 - 24] – and stated while Plaintiff's "impairments could reasonably be expected to produce the alleged symptoms," Plaintiff's "statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible beginning on March 22, 2004." [Tr. 24]. The ALJ then provided a detailed statement in support of that finding. *Id.* In that statement the ALJ did not specifically focus,

as Plaintiff claims, upon Plaintiff's daily activities but relied instead upon the inconsistency of Plaintiff's claims with the objective medical evidence and upon a health care provider's assessment that Plaintiff was unwilling to work to her maximum ability. *Id.* The ALJ properly and sufficiently explained the required link between the evidence and her finding that Plaintiff's allegations were not entirely credible.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by August 5, 2008, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 16th day of July, 2008.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE